# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY MODAFFARE<br>5140 Route 219<br>Brockport, PA 15823<br><br>        Plaintiff,<br>v.<br><br>MERSEN USA GS CORP.<br>215 Stackpole Street<br>St. Mary's, PA 15857<br>    and<br>DANA K. AHLBERG<br>215 Stackpole Street<br>St. Mary's, PA 15857<br><br>        Defendants. | CIVIL ACTION<br><br>No.  1:23-cv-206<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Anthony Modaffare (*hereinafter* referred to as "Plaintiff") against MERSEN USA GS Corp. (*hereinafter* referred to as "Defendant Mersen") and Dana K. Ahlberg (*hereinafter* "Ahlberg") individually for violations of the Americans with Disabilities Act ("ADA" - 42 USC §§ 12101 *et. seq.*), the Family Medical Leave Act ("FMLA" – 29 U.S.C. §§ 2601, *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA") [1] as legally

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes.  He is required to wait 1 full year before initiating claims under the PHRA from date of dual-filing with the EEOC (on or about May 9, 2024).  Plaintiff must however file his ADA claims in advance of same because of the date of issuance of his federal right-to-sue letter under the ADA.  Plaintiff's PHRA claims however will mirror identically his federal claims under the ADA and he will amend his complaint to include those claims once they are administratively exhausted.

appliable. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a) (4) because it arises under the laws of the United States and seeks redress for violations of federal laws. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Western District of Pennsylvania.

## PARTIES

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult individual, with an address as set forth in the caption.

7. Defendant Mersen is an international business corporation specializing in electrical power and advanced materials, duly registered under the laws of Delaware, operating locations

throughout the United States, including the location at which it employed Plaintiff in St. Mary's, PA.

8. Defendant Ahlberg is Defendant Mersen's Human Resources Manager, and was at all times relevant to Plaintiff's termination.

9. At all times relevant herein, Defendant Mersen acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant Mersen.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a 45-year-old adult male.

12. Defendant Mersen hired Plaintiff on or about March 7, 2022, as an "Operator" to work at its St. Mary's plant which primarily manufacturers and processes graphite products.

13. As an "Operator," Plaintiff was trained in various departments and performed various tasks including: Pulverizer Operator, Mill Operator, Weigh Station Operator, Tender Mixer Operator, and assisted in other areas, such as Quality Control, and Shipping/Receiving.

14. Throughout his employment, Plaintiff was a hard-working employee who performed his job well.

15. To wit, Plaintiff was not terminated for any performance-based concerns nor any allegations of employee misconduct.

16. Instead, Plaintiff was terminated for attendance based reasons.

17. Of legal import, sooner after Plaintiff was employed with Defendant Mersen for one full calendar year **and had become FMLA eligible** (as discussed *infra*), Plaintiff was

3

terminated for purported violations of Defendant Mersen's internal attendance/call off policies and procedures.

18.     However, Plaintiff was FMLA eligible due to his serious health condition, and was also a qualified individual under the ADA, as he suffers from diabetes (and associated complications/conditions).[2]

19.     Plaintiff's diabetes and its accompanying symptoms, flare-ups, and complications substantially limit Plaintiff's daily life activities; in particular, Plaintiff is substantially limited in endocrine functioning.[3]

20.     At all times material, Plaintiff put Defendant Mersen on notice of his diabetic condition.

---

[2] "[T]he ADAAA was adopted to specifically address certain impairments that were not receiving the protection that Congress intended—cancer, HIV-AIDS, epilepsy, **diabetes**, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities—not minor, transitory impairments, except if of such a severe nature that one could not avoid considering them disabilities." *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (citing 154 Cong. Rec. H8286 (2008) (statement of Rep. George Miller)(emphasis added)). Even pre-Amendments Act, diabetes was a held to be a qualifying disability. *See e.g. Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 923 (7th Cir. 2001)(a diabetic with insulin-dependence was disabled under the ADA.); *Nawrot v. CPC Int'l*, 277 F.3d 896, 905 (7th Cir. 2002)(a plaintiff with uncontrollable hypoglycemic episodes due to his inability to control his blood sugar was disabled within the meaning of the ADA); *Gilday v. Mecosta Cnty.*, 124 F.3d 760, 762-65 (6th Cir. 1997)(a diabetic with fluctuating blood-sugar levels that caused irritability such that he could not get along with co-workers was disabled).

[3] In *Blackard v. Livingston Parish Sewer Dist.*, 2014 U.S. Dist. LEXIS 5490 (M.D. La. 2014)(finding diabetes to "easily" meet the definition of the ADA, as amended), the court explained:

> The ADA regulations indicate that, in light of the principles set forth in the Amendments, certain types of impairments will be found, ***in virtually all cases, to constitute a "disability" under the ADA***. The regulations explain that, "[g]iven their inherent nature, these types of impairments will, as a factual matter, ***virtually always be found to impose a substantial limitation on a major life activity" and therefore should demand only a "simple and straightforward" assessment***. For example, the regulations state that it "should easily be concluded" that: . . . . . ***diabetes substantially limits endocrine function*** . . . . .

*See Id.* at * 9. (emphasis added).

21.     In addition to verbal discussions which culminated with management (as discussed *infra* about Plaintiff's diabetic condition), Plaintiff wore a glucose monitor.

22.     Plaintiff's glucose monitor would remit a sound alarming when Plaintiff's glucose levels were fluctuating; when this occurred, both his co-workers and management commented on the repeated beeping/alarm and the bases therefore.

23.     Therefore, it was no secret that Plaintiff suffered from diabetes and was working to control his blood sugars, and ultimately missing time from work for same.

24.     Despite Plaintiff's aforementioned disabilities, he was able to perform his job duties well; however he (at times) required reasonable medical accommodations in the form of intermittent time off of work and breaks and/or a modified shift due to his need for consistent meals/meal breaks.

25.     Plaintiff worked various shifts on a rotating basis; but, with his diabetic condition, working the swing shift became hard on Plaintiff's body, at times, as he had less opportunity to ensure consistent meals.

26.     While Plaintiff was originally diagnosed as suffering from Type II Diabetes, in or about March of 2023, he was diagnosed as suffering from Type I Diabetes (insulin dependent) and was having difficulty regulating his insulin, which resulted in fatigue and weakness.

27.     As a result, Plaintiff required intermittent time off to care for and treat for his aforesaid health conditions, including but not limited to regulating his medication and attending doctor's appointments for the same.

28.     Leading up to Plaintiff's termination, he had utilized only a few days of intermittent leave for his diabetic condition.   Due to the nature of his health conditions and sometimes

5

emergent and uncontrollable blood sugar drops/symptoms, Plaintiff needed to, on occasion, call out shortly before the start of his shift.

29.     On or about March 21, 2023, Defendant issued Plaintiff a warning(s) for failing to call out no later than 2 hours before his night shift (Defendant's policy), despite that Plaintiff could not always control the fluctuations of his blood sugar and informed his supervisors of his medical predicament as soon as practicable under the circumstances.

30.     Despite being on notice of Plaintiff's FMLA-qualifying health condition, at no time did anyone within Defendant Mersen notify Plaintiff of his eligibility status, nor his rights and responsibilities under the Act.

31.     Under federal law, an employer is obligated to provide an employee with individualized notifications of his FMLA rights within 5 days of receiving notice by an employee of a qualifying need for leave [4] (not merely general notice for example within an employer handbook).

32.     Separate and apart from Defendant Mersen refusing to afford an eligible employee individualized notice of his rights to job protected FMLA leave (and knowing he was missing time from work due to his then uncontrolled diabetic condition), Defendant Mersen failed to engage in any interactive process in order to ascertain and enable Plaintiff to perform his job with accommodations (i.e. perhaps a different shift which would allow for more controlled meals, a varied started time on the limited occasions he was suffering an episode, or intermittent leave in the smallest increment of time permitted under the FMLA).[5]

---

[4] *See* 29 CFR § 825.300(b)(1).

[5] Time off for various medical treatment certainly can constitute a reasonable accommodation. *See also Criado v. IBM Corp.,* 145 *F.*3d 437, 443 (1st Cir.1998); *Rascon v. U.S. West Communications, Inc.,* 143 *F.*3d 1324, 1333-34

33. On or about April 18, 2023, Plaintiff suffered from acute symptoms/complications of his aforesaid health conditions.

34. As a result of suffering from an extreme exacerbation of his aforesaid health conditions and waiting to hear back from his physician, Plaintiff was 30 minutes late calling off for his shift on April 18, 2023.

35. Plaintiff called Defendant Mersen to request time off that day for his aforesaid health conditions, and also left a message for Defendant's Human Resources department that Plaintiff was requesting "FMLA paperwork" (as Plaintiff was a good employee who cared about his job and knew that Defendant Mersen had already written him up for attendance related violations, and he did not want to be penalized for his health).

36. The following day, Defendant's management including Individually named Defendant Alhberg and Production Supervisor/Plant Manager Derek Schaut called Plaintiff into a meeting, wherein Plaintiff provided a doctor's note for his medically-related absence on April 18, 2023.

37. Plaintiff also explained the medical basis for his absence and reiterated his ongoing need for intermittent time off for episodes or treatment (as he could neither control nor predict his newly diagnosed diabetic condition).

38. However, Defendants abruptly terminated Plaintiff and stated that they had been "more than lenient" with Plaintiff (referring to his then health conditions).

---

(10th Cir.1998); *Kimbro v. Atlantic Richfield Co.,* 889 *F.*2d 869, 878 (9th Cir.1989), *cert. denied,*498 *U.S.* 814, 111 *S.Ct.* 53, 112 *L.Ed.*2d 28 (1990); *Rodgers v. Lehman,* 869 *F.*2d 253, 259-60 (4th Cir.1989).

39. Plaintiff's absence on April 18, 2023 was FMLA-qualifying and an FMLA absence directly counted against him in Defendants' ultimate decision to move forward with termination.[6]

40. Defendants' expressed reason for Plaintiff's termination – Plaintiff's aforementioned disabilities and requested accommodations (i.e., intermittent time off) is **direct evidence** of discrimination, retaliation, and interference.[7]

41. Plaintiff immediately protested their decision to move forward with termination, explaining that federal law supersedes union bargaining agreements (as Defendants were heavily and inflexibly relying on their "Labor Agreement" regarding the strict need for two (2) hours' notice before calling for a shift).

42. Despite Plaintiff's protestations, Defendant Ahlberg responded that she "didn't care" about Plaintiff's citations to those laws, and was insistent he would be terminated for his attendance violations.

43. Defendant Ahlberg has been employed with Defendant Mersen for over 21 years, and in a Human Resources capacity for nearly a decade. Given Ahlberg's familiarity with the FMLA and ADA, her comments to Plaintiff evince not only "willful" violations of the FMLA, but

---

[6] This type of impermissible consideration of FMLA absences constitutes FMLA retaliation and/or interference. *See Tucker v. County of Monmouth*, 159 Fed.Appx. 405 (3d Cir. 2005)(FMLA regulations prohibit employers from discriminating against employees who have used FMLA qualifying leave); *Aleman v. U-Haul Co. of Illinois, Inc.*, WL 1468610 (N.D. Ill. 2007)(Summary judgment denied in FMLA interference claim where there were factual disputes as to whether employee put employer on notice of taking time off from work for FMLA reasons and whether employer considered those absences in employee's termination); *Schober v. SMC Pneumatics, Inc.*, WL 1231557 (S.D. Ind. 2000)(Employer's failure to designate time off from work as FMLA-qualifying as required and counting such absences against employee warranted denial of summary judgment on employee's FMLA interference claim).

[7] *See e.g.*, *King v. United States,* 553 F.3d 1156, 1161(8th Cir.2009) ("[E]vidence of remarks of the employer that reflect a discriminatory attitude, comments which demonstrate a discriminatory animus in the decisional process, or comments uttered by individuals closely involved in employment decisions all may constitute direct evidence."); *Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991); *Burton v. Plastics Research Corp.*, 134 F.Supp. 2d 881, 888-89 (E.D. Mich. 2001)(If a plaintiff "'shows direct evidence that, if believed by a jury, would be sufficient to win at trial,' summary judgment is inappropriate").

8

are worthy of punitive damages for an employer's refusal to acknowledge an employee in desperate need of workplace accommodations.

44. Ultimately, Defendants failed to accommodate Plaintiff by failing to engage in any interactive process under the ADA regarding possible accommodations (i.e., including a medical leave to allow Plaintiff to regulate his blood sugar), and failing to return Plaintiff to his job/keep his job open following Plaintiff's ADA and FMLA-qualifying leave on April 18, 2023.

## COUNT I
### Violations of the Americans with Disabilities Act as Amended "ADA"
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Failure to Accommodate)**
**(Against Defendant Mersen only)**

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Plaintiff believes and therefore avers (1) his known and/or perceived disabilities; and/or (2) his record of impairment were motivating and/or determinative factors in the decision to deny him advancement opportunities and ultimately terminate his employment.

47. In addition to the forgoing, Plaintiff believes and avers that he was terminated because Defendants refused to engage in an interactive process with Plaintiff and failed to accommodate his disabilities by counting ADA-qualifying absences against him in making the decision to terminate him.

48. These actions as aforesaid constitute violations of the ADA.

## COUNT II
### Violations of the Family and Medical Leave Act ("FMLA")
**(Interference & Retaliation)**
**(Against all named Defendants)**

49. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

50. Effective after his first full calendar year of employment with Defendant Mersen, Plaintiff was an eligible employee for FMLA protection, and he met all statutory prerequisites for such protection(s).

51. Defendants committed interference <u>and</u> retaliation violations of the FMLA by: (a) dissuading or otherwise discouraging Plaintiff from taking FMLA leave; (b) not providing Plaintiff with his notification of rights as required by the FMLA, and for which failures Plaintiff suffered clear prejudice; (c) terminating Plaintiff for absences that should have been eligible as FMLA qualifying absences; (d) terminating him to prevent him from using future FMLA leave; and (e) in other implicit and explicit ways as can be plausibly inferred from the allegations set forth above in this lawsuit.

52. Defendant Dana K. Ahlberg is personally liable <u>as she</u> personally undertook all unlawful actions as outlined in this Complaint leading to Plaintiff's termination, and was a primary decision maker. The FMLA permits an individual to be sued as to his or her own assets when they are a manager, corporate officer, or owner involved in the statutory violation(s). *See Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 414 (3d Cir. 2012).

53. These actions as aforesaid constitute <u>both</u> interference and retaliation violations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

B. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for its willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

E. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: July 5, 2023